50 CCPA

**Application of John PAVLECKA.**

**Patent Appeal No. 6970.**

United States Court of Customs and Patent Appeals.

May 16, 1963.

John Pavlecka, pro se.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, C. J., and RICH, MARTIN, SMITH, and ALMOND, JJ.

WORLEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals affirming the examiner's rejection of claims 1 to 17, 20 and 32 of appellant's application, Serial No. 32,509, filed May 26, 1960, for a patent for "Interlocked Panel Structure." Eighteen claims have been allowed.

Claims 1, 14 and 32 are representative and read:

"1. In a structure, a number of structural members coextensive with one another, a linear lengthwise grooved key extending in a spaced relationship to said members, web means extending on each of said members and therefrom reaching to said key, and segmental toothed sockets borne by said web means coaxially with one another, said sockets being in a slidable and in a transversely and angularly substantially immovable engagement with said key for constraining said members in said coextensive relationship to each other by said spaced key.

"14. In a structure, two panels meeting with each other at a parting line, stringers extending on said panels in juxtaposition to each other at said parting line, longitudinal segmental tenoned sockets borne on said stringers coaxially with each other at a distance from said panels, a linear lengthwise mortised key in a slidable engagement with said coaxial sockets, said key and socket engagement taking place at flanks substantially normal to the key periphery for maximum relative immobility of said stringers and panels in the angular and transverse directions, and a sealing strip lodged

between said stringers at said parting line and compressed thereat by said engagement of said key with said stringers.

"32. In a structure, two panels in a wall disposed angularly to each other and having edges spaced apart from each other, a linear lengthwise grooved key coextensive with said panels at said edges thereof, stringers extending on said panels and reaching to said key, segmental tenoned sockets borne on said stringers in a slidable engagement with said key, a molding extending between said panel edges, said molding having a segmental tenoned socket on one side thereof in a slidable engagement with said key jointly with said stringer sockets and having an outer face complemental to said angularly disposed panels in said wall."

The references relied on by the examiner and the board are:

| Waugh | 2,091,061 | August 24, 1937. |
| Kratzmaier | 2,406,501 | August 27, 1946. |
| French Patent | 793,334 | November 16, 1935. |

Appellant's application relates to a modular construction of interlocked panels for use in various structures, including hollow-wall structures serving as walls and floors for buildings, cabinets for refrigerators, and aircraft wings and control elements. A perspective view of a section of a building wall employing a form of appellant's construction is shown in Fig. 4 of the application, part of which is reproduced below:

Fig. 4

The application discloses a multitude of panel constructions using an elongated mortise-and-tenon type key slidably interlocked with complemental panel formations after the panels are placed in their final positions. The constructions employ the keys both to join abutting panels and to make connections between opposed panels spaced from one another. It is generally characteristic of the constructions that elements designated "stringers" are attached to the flat panels and project therefrom to bear formations to be engaged by the keys. The number of panels joined by means of a single key varies from two abutting panels in the same plane to as many as five panels connected together to form a T-shaped intersection of two hollow, vertical, wall-sections. Various bridging and truss members may be employed between opposed panels with the members connected at their ends to panel stringers by means of keys. Where panels are joined at an angle, an outside corner molding may be held between the adjacent ends of the panels by the key which secures the panels in place.

Waugh discloses a building having floor and wall panels interlocked by mortise-and-tenon type keys. The panels are prefabricated to the thickness of the wall to be formed. The panels may be of concrete, either solid or cast with a hollow portion, or may be fabricated of spaced steel plates and filled with insulation. Individual floor panels may have down-

wardly extending flanges. The panels are interconnected by keys of mortise-and-tenon construction which engage co-operating connecting members or sockets carried by the panels. Vertical wall panels are provided with such members extending along their vertical edges for engagement with the keys. In the case of corners where panels meet at right angles, a corner section having a pair of connecting strips is joined to the assembly by the same type of key which engages the connecting strips on the panels. Two adjacent floor panels are secured together at their ends with two adjoining vertical panels through a key which engages cooperating sockets fitted within the four panels. Adjacent floor panels may also be connected at locations spaced along their length, a single key fitting into a half socket in each of the panels. The last three constructions are illustrated in horizontal section views in Figs. 22, 23, and 24 of the Waugh patent, reproduced below:

Fig. 22

Fig. 24     Fig. 23

The Kratzmaier patent relates to building structures using panels prefabricated from metallic sheets. It discloses the use of "suitable moisture sealing means" in the form of a bead disposed longitudinally along the joint between abutting panel ends.

The French patent relates to airplane wing struts, landing gear legs and propellers made from sheets of metal. A main sheet is provided with two inwardly-extending, reinforcing members each carrying half of a connecting element of the piano-hinge type. When the sheet is bent at a location intermediate the two reinforcing members, the hinge halves on the members are aligned and "piano strings" are threaded therebetween to secure the sheet in its bent position.

The examiner rejected claims 1 to 4, 7, 8, 10, 11 and 12, as one group; claims 5, 6, 13, 15 to 17 and 20, as a second group; and claim 9, individually, as unpatentable over Waugh in view of the French patent. He rejected claim 14 with the above claims further in view of Kratzmaier. Claim 32 was rejected as unpatentable over Waugh alone.

In sustaining the rejection, the board expressed full agreement with the examiner.

In connection with the rejection of claims 1 to 4, 7, 8, 10, 11 and 12 as unpatentable over Waugh in view of the French patent, the examiner stated that to "have the joining portions of the connecting members 77 of Waugh [Fig. 24] arranged in spaced relation to the panel as taught by the French patent * * * is considered an obvious modification." Thus the examiner did not treat those claims as met by the Fig. 24 construction of Waugh, but regarded them as requiring a spaced relationship not found in that construction where the flanges of the floor panels are secured together through connecting means embedded in the adjacent flanges for receiving the longitudinal key.

Appellant urges that there is no proper basis for combining the French patent with Waugh to meet those claims. We agree with that contention. The panels of the Waugh construction are prefabricated and edges of adjacent panels are intended to be in substantial engagement to form a substantially continuous floor surface. We find no suggestion in the French patent of any reason for arranging the connecting sockets 77 for the prefabricated panels of Waugh's Fig. 24 in spaced relation to the panel edges. In fact such modification would result in such spacing between panels as to be completely contrary to Waugh's disclosure that the panels provide a continuous construction. Under such circumstances we are unable to sustain the rejection of claims 1 to 4, 7, 8, 10, 11 and 12.

For similar reasons the rejection of claims 5, 6, 13, 15 through 17 and 20 cannot be sustained. As indicated by the examiner, those claims recite structural members or panels coextensive with one another with certain of them adjoining one another. In rejecting those claims, the examiner took the position there was "nothing of patentable merit" in "modifying the connecting members of Waugh [Fig. 23] so that the joining portions thereof are arranged in spaced relation to their respective panels as taught by the French patent." Thus reliance was again placed on the French patent to suggest modifying Waugh's construction to provide a spaced relationship of the panels and the members extending from the panels to meet the claims. We question the propriety of combining the French patent with Waugh in that manner. Modification of the construction of Waugh's Fig. 23 as discussed would serve no useful purpose suggested by the French patent and would, as pointed out by appellant, tend to provide open spaces in surfaces which Waugh intends to be substantially continuous.

The rejection of claims 9 and 14 likewise must be reversed. The rejection of both claims involves modification of Waugh in view of the French patent, and, as stated above, we find no suggestion of such modification.

In his Answer, the examiner discussed claim 32 as follows:

"Claim 32 stands rejected as being unpatentable over Waugh (Fig. 22). Therein is shown two angularly related panels 50 with corner molding member 53 between said panels. It is considered obvious that the stringers 68 on panels 50 may carry sockets rather than tenons. Otherwise, Figure 22 of Waugh discloses the structure recited in claim 32. While applicant implies on page 52 of the brief that the panels 50 do not have edges spaced apart from each other with a molding between such edges, it is clear from Figure 22 that the member 53 extends between the outer beveled edges of panels 50. The

fact that the inner beveled edges of the panels 50 are adapted to contact is considered immaterial insofar as claim 32 is concerned."

Appellant urges that Waugh does not have edges which are spaced apart or a molding extending "between" the edges and that the tenons of Waugh are not stringers. However, we do not agree that the broad terminology of the claim distinguishes over the reference. The main difference between Waugh's Fig. 22 structure and the structure on which appellant bases claim 32 lies in the thicker panel of the former construction. The arguments made by appellant in his main and reply briefs do not convince us that there is any error in the rejection of claim 32.

The solicitor closes the brief for the Commissioner with the observation that "*some, if not all,* of the group one claims (1–4, 7, 8, and 10–12) are unpatentable over the construction depicted by Waugh in Figures 36 and 37 * * *, without any resort to the French patent." (Italics supplied). We do not find anything in the record justifying our consideration of that vague and novel argument at this stage of the proceeding.

The decision of the board is reversed as to claims 1 to 17 and 20, and affirmed as to claim 32.

Modified.